## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CONNISHA BUTLER,

     Plaintiff,

     v.

FORD MOTOR COMPANY, and
STEPHAN MALLOY,

     Defendants.

No. 21-cv-01244
Judge Franklin U. Valderrama

### MEMORANDUM OPINION AND ORDER

Plaintiff Connisha Butler (Butler) alleges that while employed by Defendant Ford Motor Company (Ford), she was subjected to sexual harassment by her co-worker, Defendant Stephen Malloy (Malloy). Butler filed a six-count Complaint against Ford and Malloy (collectively, Defendants) in the Circuit Court of Cook County. R. 1-1, Compl.[1] In relevant part, the Complaint includes five counts directed at Ford: sexual harassment (Count I), sex discrimination (Count II), and retaliation (Count III), all based on the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*, as well as an intentional infliction of emotional distress claim (Count IV), and one count of violating the Illinois Gender Violence Act (Count VI). Ford removed the case to federal court. R. 1. Before the Court is Ford's motion to dismiss Counts I, IV, and VI of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 14, Mot. Dismiss. For the reasons that follow, Ford's partial motion to dismiss is granted.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background

Butler is a woman who began her employment with Ford as a Short-Term Supplemental Employee Operator (STS Operator) on September 17, 2018. Compl. ¶¶ 10, 15.[2] Butler's coworker, Malloy, is a man who worked as an Operator at Ford. *Id.* ¶¶ 16–17. Ed Young (Young) supervised both Butler and Malloy. *Id.* ¶ 18.

On December 11, 2018, while Butler was working, Malloy attempted to ask Butler if her name was on the attendance sheet. Compl. ¶ 27. Butler, however, due to the noise in the plant, did not hear Malloy. *Id.* Since Butler did not hear Malloy, she crossed the line on the floor to work on a different car. *Id.* ¶¶ 27, 28. Immediately after Butler crossed the line on the floor, Malloy walked in front of her, berated Butler for crossing the line, and told Butler to go back to working on the other car. *Id.* ¶ 28. Malloy yelled in Butler's face, "You bitches on this line be tweaking!" *Id.* ¶ 29. Butler was afraid and feared that Malloy was about to attack her because of his tone and aggressive language. *Id.* ¶ 30. Butler told Malloy he was being disrespectful and asked him to stop yelling at her. *Id.* ¶ 31. Malloy responded that Butler would not have a job after the holiday shutdown anyway. *Id.* ¶ 32. While yelling at Butler, Malloy told Butler multiple times that if she reported him to Labor Relations, she would not have a job. *Id.* ¶ 34.

Eventually, Anastasia LNU[3] (Anastasia), a supervisor, came over and attempted to calm Malloy down. Compl. ¶ 35. Without investigating the events that

---

[2]The Court accepts as true all of the well-pleaded facts in the FAC and draws all reasonable inferences in favor of Butler. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

[3]The Court presumes that "LNU" stands for last name unknown.

transpired, Anastasia told Butler she should not have upset Malloy and accused Butler of saying something that would have set Malloy off. *Id.* Eventually Malloy was sent home, and Butler continued working. *Id.* ¶ 36. Butler told her union representative that she wanted to make Labor Relations aware of what happened, but the representative told her things would not work out the way she wanted them to. *Id.* ¶ 37.

Butler reported the incident to Briana Bryant (Bryant) at Labor Relations on December 12, 2018. Compl. ¶¶ 39–40. Bryant told Butler that it was the first time Labor Relations was hearing of the incident. *Id.* ¶ 40. Bryant promised Butler that Labor Relations would investigate her complaint. *Id.* ¶ 72. Ford has an anti-harassment policy and a progressive disciplinary policy. *Id.* ¶¶ 42, 74. The anti-harassment policy provides that it is expected that "all employees will be respectful of others, both Ford and non-Ford personnel, at all times. Harassment, which includes language or conduct, which may be derogatory, intimidating or offensive to others, based on race, religion, color, age, sex, national origin, disability, sexual orientation, gender identity, or veteran status, is prohibited by the non-discrimination and anti-harassment policies." *Id.* ¶ 88.

Malloy was issued a thirty (30) day suspension for his involvement in the December 11, 2018 altercation. Compl. ¶ 75. Butler, for her part, was terminated for violating Ford's anti-harassment policy on December 20, 2018, even though she had never received a verbal or written warning prior to the incident with Malloy. *Id.* ¶¶ 73–74.

3

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**Analysis**

**I.    Sexual Harassment under IHRA (Count I)**

In Count I, Butler asserts a claim of sexual harassment under the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 *et seq*. The IHRA prohibits both employment discrimination based on a person's sex and sexual harassment in the workplace. 775 ILCS 5/1-102(A)–(B). The IHRA makes it a civil rights violation for "any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment . . . ." 775 ILCS 5/2-102(D). "Illinois

4

courts apply the federal Title VII framework to IHRA claims." *Volling v. Kurtz Paramedic Servs.*, 840 F.3d 378, 383 (7th Cir. 2016) (citation omitted). Butler asserts that she was subjected to a hostile work environment. To state a claim based on a hostile work environment, Butler "must allege that '(1) she was subjected to unwelcome harassment, (2) the harassment was based on her sex, (3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere, and (4) there is a basis for employer liability.'" *Kibbons v. Taft Sch. Dist.* 90, 563 F. Supp. 3d 798, 807 (N.D. Ill. 2021) (quoting *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007)).

Ford moves to dismiss Count I, arguing that Butler fails to allege facts that she was subjected to sexually harassing conduct that was sufficiently severe or pervasive to have created a hostile work environment under the IHRA.[4] Specifically, Ford asserts that Butler's isolated verbal encounter with Malloy does not rise to the level of a hostile work environment. R. 15, Memo. Dismiss at 5. As an initial matter, Ford contends that, with the exception of the term "bitches," there is no indication that the alleged conduct, the yelling, pointing and remarks about job status was anything but gender-neutral. *Id.* Ford maintains that the one-time use of the word "bitches" was an isolated incident that cannot be considered severe or pervasive under Seventh Circuit case law. *Id.* at 5, 6 *(citing Jibson v. Northeast Ill. Regional*

---

[4]Ford further argues that Butler has failed to adequately allege the employer liability element of her sexual harassment claim. However, because the Court finds that Butler has failed to allege that the harassment was sufficiently severe or pervasive, the Court does not address Ford's employer liability argument.

*Commuter Railroad Corp.,* 2020 WL 5365975 (N.D. Ill. Sept. 8, 2020); *Saboya v. Segerdahl Group Graphics*, 169 F. Supp. 3d 794 (N.D. Ill. 2015)).

Butler responds that she has adequately pled a sexual harassment cause of action. R. 17, Resp. at 5. Butler insists that the harassment was sufficiently severe or pervasive to alter Butler's work environment because she was terminated after complaining about the incident. *Id.* at 5. As for *Saboya*, Butler asserts that Ford's reliance on that case is misplaced because that case was decided at summary judgment, after an evidentiary record had been established, not on a motion to dismiss. *Id* at 7.

To state a claim for hostile work environment, the alleged harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive working environment." *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (citation omitted). Objective offensiveness is "determined by evaluating 'the totality of the circumstances,' which include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Kibbons*, 563 F. Supp. 3d at 807 (quoting *Alamo v. Bliss*, 864 F.3d 541, 549–50 (7th Cir. 2017)).

While an isolated incident of harassment can create an objectively hostile work environment if it is sufficiently egregious or severe, *see Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir. 2000), "employers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are,

unfortunately, not uncommon in the workplace." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) (citation omitted). Similarly, "occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (cleaned up).

Here, the Court finds that, even accepting the allegations in the Complaint as true, as it must, Butler has failed to allege that the harassment was severe or pervasive. In considering the totality of the circumstances, *see Kibbons*, 563 F. Supp. 3d 798 at 807, Butler has alleged that Malloy's harassment was physically threatening and humiliating. *See* Resp. at 6; Compl. ¶¶ 28–30, 46. However, the Complaint also indicates that Malloy's conduct was limited to one incident, and that the only term that could be tied to Butler's sex was the term "bitches." *Id.* ¶¶ 27–29. While undoubtedly an offensive and odious term, its use once is not "sufficiently severe or pervasive to alter the conditions of employment such that it create[d] an abusive working environment." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009) (citation omitted).

Butler argues that the conduct was severe enough because it unreasonably interfered with her job performance, in that she was terminated approximately a week after her altercation with Malloy. Resp. at 6. But the Court agrees with Ford, *see* R. 18, Reply at 2, that Butler misconstrues the meaning of a hostile work environment. An allegation that she was later terminated is not the same as an allegation that Butler was subjected to a hostile work environment while she was

employed at Ford. As a court in this Circuit has explained, "a hostile work environment claim focuses on the conditions of employment and the environment an employee is subject to, not the consequences an employee faced. Those consequences more properly form the basis of [a plaintiff's] retaliation and discrimination claim, not [a] hostile work environment claim." *Kane v. Finance of America Reverse, LLC*, No. 1:17-cv-02266, 2018 WL 2001810, at *6 (S.D. Ind. April 30, 2018). Here, Butler alleges that she continued working right after the altercation with Malloy, and she has not alleged (other than boilerplate legal conclusions that the Court need not accept as true, *see, e.g.*, Compl. ¶¶ 44, 45, 84, 86, 125), that that she was unable to perform her work duties as a result of Malloy's conduct. Thus, in short, Butler fails to allege that Malloy's one-off conduct was sufficiently severe or pervasive to support her sexual harassment claim.

The Court recognizes that this is not summary judgment, and that Butler does not need to make a prima facie case at the pleadings stage. *See* Resp. at 7. Yet, even so, Butler still has to satisfy the plausibility requirements of *Twombly* and *Iqbal*. Here, Butler's non-conclusory allegations of Malloy's isolated conduct, even if proven, fail to state a plausible sexual harassment claim, so the Court dismisses Count I of the Complaint. *See, e.g.*, *Ross v. Uchicago Argonne, LLC*, 2019 WL 3562700, at *7 (N.D. Ill. Aug. 5, 2019) ("At the pleading stage . . . [the plaintiff] has not pled conduct severe or pervasive enough to constitute an actionable hostile work environment as a matter of law or to entitle him to discovery."); *Harris v. Chicago Transit Auth.*, 2015 WL 5307721, at *6 (N.D. Ill. Sept. 10, 2015) (dismissing claim where plaintiff had

8

alleged only two instances of offensive gender-based comments that were separated by a year). That said, the Court declines Ford's invitation to dismiss the sexual harassment claim with prejudice at this juncture, *see* Reply at 3–4, because the Court cannot say that amendment would clearly be futile. *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

## II.  Intentional Infliction of Emotional Distress Claim (Count IV)

In Count IV, Butler asserts a cause of action for intentional infliction of emotional distress (IIED) against Ford. Ford moves to dismiss Count IV by arguing, among other things, that Butler's IIED claim is preempted by the Illinois Worker's Compensation Act (IWCA).[5] Memo. Dismiss at 9–10.

The IWCA "is 'designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment.'" *Treadwell v. Power Sols. Int'l, Inc.*, 427 F. Supp. 3d 984, 989 (N.D. Ill. 2019) (quoting *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990)). Sections 5(a) and 11 of the IWCA, taken together, provide an "exclusive remedy provision," which "generally bar[s] employees from bringing common law or statutory claims for damages against employers." *Id.* To escape the preemptive effect of the IWCA's exclusive remedy provision, an employee must ultimately prove that the employee's injury "(1) was not accidental; (2) did not arise from [her] employment; (3) was not received during the course of employment; or (4) is not compensable under the IWCA." *Id.* (citations omitted). The Illinois Supreme Court has interpreted the term "accidental" to

---

[5]Because the Court agrees with Ford that Butler's IIED claim is preempted by the IWCA, the Court does not address Ford's other arguments regarding Count IV.

"encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens." *Meerbrey*, 564 N.E.2d at 1226 (cleaned up). Thus, "[i]njuries resulting from a coworker's intentional tort are accidental from the employer's perspective unless the employer commanded or expressly authorized the tort." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) (citing *Meerbrey*, 564 N.E.2d at 1227).

Ford posits that because Butler has not alleged that Malloy's purportedly harassing conduct was commanded or expressly authorized by Ford, Butler's IIED claim cannot escape the IWCA's exclusive remedy provision. Memo. Dismiss at 9–10 (citing *Carroll v. YMCA of Metro Chicago, LLC*, 2015 WL 149024, at *3 (N.D. Ill. Jan. 9, 2015)). Butler counters that "courts interpreting Illinois law have held that 'management's knowledge coupled with lack of follow-up action is equivalent to express authorization of injurious conduct.'" Resp. at 10–11 (quoting *Zuidema v. Raymond Christopher, Inc.*, 866 F. Supp. 2d 933, 938 (N.D. Ill. 2011)). Butler further directs the Court to *Quela v. Payco-General Am. Credits, Inc.*, 84 F. Supp. 2d 956 (N.D. Ill. 2000), arguing that Ford authorized the injurious conduct because it had knowledge of Malloy's conduct and chose to terminate Butler's employment. *Id.* at 11.

Here, Butler's IIED claim, as it currently stands, is preempted by the IWCA. While some courts have held that "management's knowledge coupled with lack of follow-up action is equivalent to express authorization of injurious conduct," *see, e.g.*, *Zuidema*, 866 F. Supp. 2d at 938 (collecting cases), other courts have "recognized that allegations that an employer simply failed to act are insufficient under *Meerbrey*."

*Carroll*, 2015 WL 149024, at *4 (citing *Temores v. Cowen*, 289 F. Supp. 2d 996, 1007 (N.D. Ill. 2003); *Grant v. Coken Co., Inc.*, 2005 WL 300388, *4 (N.D. Ill. Feb. 1, 2005)). At any rate, the Court need not decide which line of cases is correct because the Complaint does not allege that Ford did nothing. Instead, it alleges that Ford suspended Malloy for thirty days. Compl. ¶ 75.

Although Butler now suggests in her response brief that Ford ratified Malloy's conduct by terminating Butler, that is not what her IIED count alleges, and Butler cannot amend the Complaint via response brief. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (internal quotation marks and citation omitted) ("[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal."). Rather than discuss Butler's termination, the IIED claim recounts Malloy's conduct and alleges that "Ford could have prevented the extreme and outrageous conduct Malloy imposed upon Plaintiff by taking reasonable care in supervising or firing Malloy." *Id.* ¶ 151. That allegation falls short of alleging that Ford "commanded or expressly authorized the tort," *see Nischan*, 865 F.3d at 934, so the Court finds that Butler's IIED claim is preempted by the IWCA. The Court therefore dismisses Count IV. As with Butler's sexual harassment claim, because the Court cannot say that amendment is clearly futile, the dismissal of Count IV is without prejudice.

11

### III.   Illinois Gender Violence Act (Count VI)

In Count VI, Butler alleges that Ford violated the Illinois Gender Violence Act

(IGVA), which states in relevant part:

> Any person who has been subjected to gender-related violence as defined in
> Section 5 may bring a civil action for damages, injunctive relief, or other
> appropriate relief against a person or persons perpetrating that gender-related
> violence. For purposes of this Section, "perpetrating" means either personally
> committing the gender-related violence or personally encouraging or assisting
> the act or acts of gender-related violence.

740 ILCS 82/10.

Ford argues that Butler fails to state a claim under the IGVA because the

IGVA applies to "persons" and not corporations. Memo. Dismiss at 11 (citing

*Robinson v. FedEx Ground Package System, Inc.*, 2020 WL 586866 (N.D. Ill. Feb. 6,

2020)). Butler responds that the IGVA does provide for liability against corporations

because "persons" has been interpreted to include corporations, and because the

IGVA contemplates vicarious liability. Resp. at 11, 13. Significantly, Butler directs

the Court to (and Ford acknowledges) *Gasic v. Marquette Mgmt., Inc.*, a 2 to 1 decision

in which an Illinois appellate court held that "under some circumstances, a legal

entity, such as a corporation, can act 'personally' for purposes of giving rise to civil

liability under the [IGVA]." 146 N.E.3d 10, 13 (Ill. App. Ct. 2019).

In *Gasic*, the complaint alleged that the defendant corporation who managed

the apartment building where the plaintiff resided violated the IGVA by failing to

supervise and monitor a maintenance engineer who entered the plaintiff's apartment

and "engaged in unwanted and inappropriate sexual contact with plaintiff that

amounted [to] assault and battery." 146 N.E.3d at 11. The plaintiff argued that based

on Illinois' Statute on Statutes, the word "person" as used in the IGVA applies to individuals, corporations, and bodies politic. *Id.* at 12. The trial court rejected the plaintiff's construction of the IGVA and dismissed the IGVA count with prejudice because it found that the IGVA's reference to conduct performed "personally" did not apply to corporations that "do not and cannot act 'personally.'" *Id.* After dismissing the IGVA count, the trial court certified the following question to the appellate court pursuant to Illinois Supreme Court Rule 308: "Can an entity be considered a 'person' committing acts 'personally' for purposes of liability under the Gender Violence Act?" *Id.* at 11. To answer this question, the appellate court acknowledged that the IGVA does not provide a definition of "person" or "personally" within the statutory language. *Id.* at 12. The court next turned to the evolution of case law regarding the concept of personhood and found that such development blurred the lines "between natural persons and corporations in the legal context." *Id*. at 13. After undertaking that analysis, the court answered the certified question, holding that "under some circumstances, a legal entity, such as a corporation, can act 'personally' for purposes of giving rise to civil liability under the Act." *Id.*

The dissent in *Gasic*, on the other hand, found that the text of the IGVA did not support the majority's construction. The dissent started with the rule of statutory interpretation that identical words used in different parts of the same statute are assigned the same meaning "absent clear legislative intent to the contrary." 146 N.E. 3d at 14 (citations omitted). The IGVA, observed the dissent, explicitly refers to a "person who has been subjected to gender-related violence" and "a person or persons

13

perpetrating that gender-related violence." *Id*. at 14. The dissent accordingly reasoned that that the word "person" in the IGVA "[c]learly . . . refers only to human beings who are susceptible to physical violence," because "[n]othing in the [IGVA] or its legislative history overcomes this presumption of uniformity." *Id*. The dissent went on to elaborate that corporations, as artificial entities, "are creatures of law, not of nature," which "lack the capacity to intend and the literal ability to 'personally' perpetrate violence, gender-related or otherwise." *Id*. The dissent therefore concluded that "the clear language of the statute at issue makes it clear that it does not purport to provide recovery against anyone other than those personally perpetuating violence." *Id*. at 15.

As a federal court sitting in a diversity action, the Court must "exercise care and caution, because when interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Smith v. RecordQuest, LLC*, 989 F.3d 513, 517 (7th Cir. 2021), *reh'g denied* (Mar. 17, 2021) (internal quotation marks and citations omitted). "In the absence of guiding decisions by the state's highest court," a federal court "consult[s] and follow[s] the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *Id*. (quoting *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012)).

In *Mundo v. City of Chicago*, a federal court sitting in diversity jurisdiction analyzed *Gasic* and found "compelling reason to doubt that the majority's holding in *Gasic* states the law as the Illinois Supreme Court would" with respect to the

14

applicability of the IGVA to corporations. *Mundo v. City of Chicago*, 2021 WL 3367160, at *5 (N.D. Ill. Aug. 3, 2021) (Lee, J.). The court began its analysis by citing the general principle that when interpreting a statute, the primary goal is to give effect to the intent of the legislature. *Id.* (citing *In re Madison H.*, 830 N.E.2d 498, 503 (Ill. 2005)). The "best indication of legislative intent," reasoned the court in *Mundo*, is "the statutory language, given its plain and ordinary meaning." *Id.* (citing *People v. Christopherson*, 899 N.E.2d 257, 260 (Ill. 2008)). The court then turned to Illinois caselaw indicating the "plain and ordinary meaning of the term 'person' is an individual human being," and that "the general rule is that absent a statutory definition that expands the meaning of person, that term refers to an individual, not a legal entity." *Id.* (internal quotation marks and citations omitted). The court further rejected the contention that the Illinois Statute on Statutes would call for a different conclusion, as the Statute on Statutes' provision with respect to "person" only says that the term "*may* extend" to legal entities, "not that it 'must or even . . . usually does' so." *Id.* (quoting *Fuesting v. Uline, Inc.*, 30 F. Supp. 3d 739, 743 (N.D. Ill. 2014)). Finally, the court raised the same issues identified by the dissent in *Gasic*, namely that corporations cannot be said to act "personally," and that "since Illinois courts 'assign the same meaning to identical words in different parts of the same statute absent clear legislative intent to the contrary,' the use of 'person' later on in the same provision should be read to refer only to natural persons as well." *Id.* (citing *Gasic*, 146 N.E.3d at 260 (Schmidt, C.J., dissenting)).

Admittedly, there is a split in this Circuit regarding the *Gasic* decision. At least one court, like the court in *Mundo,* has found that there is a compelling reason to diverge from *Gasic. See Lewis-Bledsoe v. Ford Motor Co.*, 2022 WL 2316320, at *3 (N.D. Ill. June 28, 2022). Whereas other courts have declined to dismiss IGVA claims at the motion to dismiss stage in light of the *Gasic* decision and the lack of a decision from the Illinois Supreme Court. *See, e.g.*, *Nor v. Alrashid*, 2022 WL 815542, at *5 (N.D. Ill. Mar. 17, 2022); *Boeving v. City of Collinsville, Illinois*, 2021 WL 5906087, at *3 (S.D. Ill. Dec. 14, 2021); *Solinski v. Higher Learning Comm'n*, 2021 WL 1293841, at *4 (N.D. Ill. Apr. 7, 2021); *Doe v. City of Chicago*, 2020 WL 1675639, at *4 (N.D. Ill. Apr. 6, 2020).

Butler directs the Court to one such case, *Doe v. City of Chicago. See* Resp. at 13. In *Doe*, the parties failed to fully address the implications of the *Gasic* holding, so the Court declined to "research and construct the parties' legal arguments for them." 2020 WL 1675639, at *4. The court consequently held that "because it is an open question under Illinois law whether a corporation or entity is a 'person' under the [IGVA], the Court denies the City's motion to dismiss plaintiff's claim at this juncture." *Id.*

Overall, the Court finds the reasoning of the Gasic dissent and the Mundo decision more persuasive because the majority in Gasic appeared to rely on the historical evolution of the rights of a corporation, rather than the plain language of the IGVA. While the Doe approach demonstrates appropriate caution in interpreting Illinois law, *see RecordQuest, LLC*, 989 F.3d at 517, that line of cases suggests that

16

the IGVA application question is better decided at a later juncture, when the question of whether a corporation is a "person" under the IGVA appears to be a pure issue of law. Regardless, the Court need not pick a side here because there is a recent third approach in the Circuit, as exemplified by *Franks v. Anchez, Inc.*, 2022 WL 4325406, at *1 (N.D. Ill. Sept. 19, 2022), that the Court opts to follow.

In *Franks*, the plaintiff brought an IGVA claim against her former employer, supervisors, and coworker after her coworker verbally harassed her, threatened her, mocked her disability, threw objects at her, and pulled her by the arm to the point of bruising. 2022 WL 4325406, at *1. According to the complaint, the plaintiff reported the incidents to her supervisors, but they took no action. *Id.* Defendants moved to dismiss the plaintiff's IGVA claim, arguing, among other things, that the IGVA does not apply to corporations, and that the complaint failed to sufficiently allege that her supervisors "encouraged or assisted" any violent actions of the plaintiff's coworker. *Id.* at *2. The court acknowledged that "whether a corporation may be found liable under the IGVA is an open question," and discussed the *Gasic* and *Mundo* decisions. *Id.* at *3.

Instead of making a finding on "the broad question of corporate responsibility under the IGVA," the *Franks* court decided the IGVA issue on the "narrower ground" of whether the corporation "personally encouraged" gender-related violence. 2022 WL 4325406, at *3 (citing *Brownlee v. Catholic Charities of Archdiocese of Chi.*, 2018 WL 1519155, at *10 (N.D. Ill. Mar. 28, 2018). Ultimately, the court found that the complaint failed to allege that the corporation personally encouraged gender-related

violence because the complaint did not state a claim against the supervisors. *Id.* Without an adequate IGVA claim against the supervisors, the plaintiff could not plead that the corporation "personally encouraged" gender-related violence through the supervisors. *Id.* The court also rejected the idea that the corporation could be responsible for the coworker's alleged touching "because battery is outside the scope of [the coworker's] employment." *Id.* (citing *Doe v. Sperlik*, 2005 WL 3299818, at *3 (N.D. Ill. Nov. 30, 2005)). The *Franks* court consequently dismissed the IGVA claim without prejudice. *Id.*

Like the court in *Franks*, the Court will assess Butler's IGVA count on the narrower ground of whether the Complaint alleges that Ford personally encouraged gender-related violence. Butler insists that Ford did encourage or assist Malloy's gender-related violence and directs the Court to two cases in support: *Cruz v. Primary Staffing, Inc.*, 2011 WL 1042629 (N.D. Ill. Mar. 22, 2011) and *Smith v. Rosebud Farmstand*, 909 F. Supp. 2d 1001 (N.D. Ill. 2012). In reply, Ford argues that *Cruz* and *Smith* are distinguishable and directs the Court to the more recent cases of *Balderas v. Illinois Cent. R.R. Co.*, 2020 WL 5763576 (N.D. Ill. Sept. 28, 2020) and *Sheaffer v. Glendale Nissan, Inc.*, No. 19 C 3899, 2020 WL 70939 (N.D. Ill. Jan. 6, 2020).

The Court finds that Ford has the better argument. For starters, *Cruz* and *Smith* are distinguishable because those cases involved multiple reported incidents of gender-related violence that were left unaddressed by the corporation defendants. In *Cruz*, for instance, the plaintiff alleged that her supervisor pressed himself against

18

her and followed her into a freezer to grab her. 2011 WL 1042629, at *1 (N.D. Ill. Mar. 22, 2011). When the plaintiff told a coworker what happened, she allegedly learned that other women who had complained of similar misconduct by the supervisor no longer worked for the plaintiff's employer. *Id.* The plaintiff nevertheless complained to a manager and to the corporation about the supervisor's sexual harassment and was told soon thereafter that it would be better if she did not return to work. *Id.* The court in *Cruz* found that the plaintiff had stated a claim under the IGVA, reasoning: "she has pleaded facts that lead to an inference that [the employer] had received many complaints of sexual harassment or assault by [the supervisor] and that it took no action against [the supervisor] as a result of the complaints, choosing to punish the complainants instead." *Id.* So too in *Smith*, the court found that the plaintiff stated an IGVA claim where the pleaded facts led "to an inference that [the corporation] (via its managers and supervisors) received Plaintiff's complaints of sexual harassment or assault by its managers and employees and that it took no action against these managers and employees . . . choosing to punish Plaintiff instead." 909 F. Supp. 2d at 1009. Here, by contrast, the Complaint alleges that after just one reported incident, Ford suspended Malloy for thirty days. Compl. ¶ 75.

Even if the allegations in the Complaint could be construed as alleging "inaction" by Ford, the more recent trend of IGVA cases appears to hold that "a corporation's knowledge plus inaction doesn't state a claim for personally encouraging or assisting under the IGVA." *Balderas*, 2020 WL 5763576, at *2. *See also Franks*, 2022 WL 4325406, at *2 (collecting cases) ("Courts have frequently found

knowledge plus inaction insufficient to state a claim against a supervisor or corporation under IGVA."). The Court agrees with these more recent cases because the IGVA prohibits "perpetrating" gender related-violence, which the statute defines as "either *personally committing* the gender-related violence or *personally encouraging or assisting* the acts of gender-related violence." 740 ILCS 82/10 (emphases added). In her IGVA count, Butler alleges that "Defendants failed to address Plaintiff's complaints about Malloy" and that "Defendants caused a realistic apprehension in Plaintiff that Malloy would commit acts of [gender-related violence . . ." Compl. ¶¶ 180–81. Those allegations are a far cry from stating that Ford personally committed, encouraged, or assisted acts of gender-related violence, particularly when the Complaint elsewhere alleges that Ford suspended Malloy.[6] The Court therefore finds that the Complaint fails to state an IGVA claim against Ford.

The Court accordingly grants Ford's motion to dismiss Count VI. Like the previous counts, this dismissal is without prejudice.

## Conclusion

For the foregoing reasons, Ford's partial motion to dismiss the Complaint [14] is granted. Counts I, IV, and VI are dismissed without prejudice. Butler has leave to file an amended complaint and shall file the amended pleading on or before October 14, 2022. Because the Court is granting Butler leave to file an amended

---

[6]Again in her response brief, Butler attempts to amend her complaint by arguing that it was Ford's termination of Butler that showed Defendant "ratified, authorized, and encouraged" gender-related violence against her. Resp. at 15. Even if Butler could so amend her complaint via response brief, *see supra* at 11, the Court is doubtful that her termination alone would show that Ford personally encouraged or assisted acts of gender-related violence.

complaint, the Court's briefing schedule on summary judgment, *see* R. 67, is temporarily stayed.

Dated: September 23, 2022

United States District Judge
Franklin U. Valderrama